UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

In re: Anna Theresa Balash,                         Chapter 13
                    *Debtor*.                                  Case No. 24-10968

_____

APPEARANCES:

Anna Theresa Balash
*Pro se Debtor*
613 State Street
Hudson, New York 12534

Kevin T. MacTiernan, Esq.
DAY PITNEY LLP
*Attorneys for U.S. Bank National Association*
605 Third Avenue, 31st Floor
New York, New York 10158

Bonnie Baker, Esq.
*Office of the Chapter 13 Trustee*
7 Southwoods Boulevard
Albany, New York 12211

Lisa Penpraze, Esq.
*Office of the United States Trustee*
Leo W. O'Brien Federal Building
11A Clinton Avenue, Room 620
Albany, New York 12207

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM DECISION & ORDER**

       Before the Court is Anna Theresa Balash's (the "Debtor") "motion" for a "Stay of

Proceedings" while her request for withdrawal of the reference ("WOR") is pending before the

1

United States District Court. (ECF No. 105). This Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

**FACTS**

The Debtor filed this Chapter 13 proceeding on August 27, 2024. (ECF No. 1). Thereafter, several secured creditors filed motions for relief from the automatic stay. (ECF Nos. 13, 27, 29) The Debtor opposed each request. (ECF Nos. 34-36). After hearings were held, this Court, finding sufficient cause, granted relief from the automatic stay.[2] On November 20, 2024 the Debtor filed a "Motion to Vacate for Voidness All Orders Granting Relief without Providing Accommodation." (ECF No. 73) On November 27, 2024 the Debtor requested the WOR. (ECF No. 84). On the same day, the Debtor filed a "Motion for Stay of Proceedings" requesting this Court stay all proceedings until the District Court determines whether to grant the requested WOR. (ECF No. 105).

Secured creditor, U.S. Bank National Association, has objected to any stay being imposed. (ECF Nos. 96 & 138).

### I.    Motions for Relief in this Bankruptcy Proceeding

The pertinent facts in these motions for relief from the automatic stay are substantially similar. In each case, the secured creditor received a final order of foreclosure from the state court as well as a referee's deed conveying legal title to them before the Debtor's bankruptcy petition was filed in this Court.

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2025) (the "Bankruptcy Code").

[2] The only parcel the Debtor may have a tangible interest in is 615 State Street, Hudson, NY 12534. She indicates she resides in an attached dwelling, 613 State Street, Hudson, NY 12534. (ECF No. 24). A motion for relief from the automatic stay regarding 613 State Street is scheduled to be heard on February 13, 2025.

2

### A. The Valatie Motion

On September 16, 2024, attorneys for Federal National Mortgage Association filed a motion to lift the automatic stay for property located at 3051 Main Street, Valatie, New York 12184 (the "Valatie Motion"). (ECF No. 13). Attached as an exhibit to the Valatie Motion is an "Order Confirming Referee Report And Judgment of Foreclosure and Sale." Also included is a "Referee's Deed in Foreclosure." (ECF No. 13, Ex. C).

### B. The State Street Motion

On October 2, 2024 U.S. Bank National Association moved for relief from the automatic stay with respect to 615 State Street, Hudson, New York 12354 (the "State Street Motion). (ECF No. 24, as amended ECF No. 27). The exhibits attached in the State Street Motion include a judgment of foreclosure, a referee's report of sale as well as a referee's deed. (ECF No. 24, Ex. C–E).

### C. The Astoria Motion

On October 11, 2024 Astoria Equity Partners, LLC filed a motion (the "Astoria Motion") for *in rem* stay relief for property located at 21-08 30th Avenue, Astoria, New York, 11106. (ECF No. 29). Much like the Valatie Motion and the State Street Motion, the Astoria Motion includes a final state court order of foreclosure and judgment as well as a referee's deed.

## DISCUSSION

**I. Stay of proceedings while a request to withdraw the reference for this case is pending before the District Court.**

Federal Rule of Bankruptcy Procedure 5011(c) governs withdrawal of the reference and specifically states:

> [T]]he 'filing of a motion for withdrawal of a case or proceeding . . . shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.

*U.S. Bank N.A. v. Osuji (In re Osuji)*, Case No. 15-75534, 2019 Bankr. LEXIS 931, at *20-21 (Bankr. E.D.N.Y. Mar. 27, 2019) (citing Fed. R. Bankr. P. 5011(c).

A recent analysis indicates what factors should be looked at when reviewing a withdrawal of the reference, stating:

> The applicable standards governing stay applications under Rule 5011(c) are set forth in *In re Residential Capital LLC*, which states: "To prevail on a stay motion, the movant must demonstrate '(a) the likelihood of prevailing on the merits[;] (b) that the [movant] will suffer irreparable harm if the stay is denied; (c) that the [opposing party] will not be substantially harmed by the stay; and (d) that the public interest will be served by granting the stay.'" . . . .  Further, the party seeking to withdraw the reference bears the burden of establishing that a stay is appropriate . . . .

*Togut v. Barasky (In re Kossoff PLLC)*, Case No. 21-10699, 2024 Bankr. LEXIS 384, at *10-11 (Bankr. S.D.N.Y. Feb. 16, 2024) (internal citations omitted).  This Debtor has not adequately, let alone convincingly, addressed any of these factors. However, in the interest of completeness, this Court will review them.

### A.    Likelihood of prevailing on the merits.

When a District Court analyzes whether to withdraw the reference, they are guided by the following:

> The reference may be withdrawn . . . "for cause shown." 28 U.S.C. § 157(d). In ascertaining whether "cause" has been shown, courts consider a number of factors, including: (1) whether the proceeding is core or non-core, and whether the bankruptcy court has constitutional authority to enter a judgment on the claim; (2) the efficient allocation of judicial resources; (3) the delay and potential costs to parties; (4) the need for uniformity of bankruptcy administration; and (5) the prevention of forum shopping. *In re Motors Liquidation Co.*, 538 B.R. 656, 661 (S.D.N.Y. 2015). The presence of a jury demand is also relevant. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

*Schneorson v. Schneorson (In re Schneorson),* Case No. 22-MC-1922, 2024 U.S. Dist. LEXIS 51635, at *4 (E.D.N.Y. Mar. 4, 2024).

> **B.   Core vs. non-core and the ability for the bankruptcy court to enter a judgment on the claim.**

It is settled:

> The most important factor is whether the claim is core or non-core. . . . Core proceedings include motions to terminate, annul, or modify an automatic stay . . . . When a core claim is involved, the other factors must weigh heavily in favor of withdrawing the reference in order for this Court to take such an action. . . . In a core proceeding, the bankruptcy court will generally be more familiar with the facts and issues.

*Afco Credit Corp v. Iridium, LLC*, Case No. 01 Civ.3595, 2001 U.S. Dist. LEXIS 21720, at *3 (S.D.N.Y. Dec. 21, 2001). [3]  Motions for relief from the automatic stay are by definition core matters.[4]

The likelihood that the Debtor will convince the District Court to grant the WOR is further undermined because that Court has dismissed a proceeding where the Debtor made the same arguments, i.e., the state court judgments were invalid. *See Balash v. The Bank of New York Mellon Trust Company, National Association*, Case No. 22-CV-1120 (N.D.N.Y.).  In that case, the Debtor argued the "[d]efendants have fraudulently represented themselves a real party in interest and as

---

[3] *See also 1325 Atl. Realty LLC v. Brooklyn Hosp. Grp. LLC*, 2023 U.S. Dist. LEXIS 48785, at *6 (E.D.N.Y. Mar. 22, 2023) ("Proceedings that arise under the Bankruptcy Code or that arise in a bankruptcy case are 'core' bankruptcy proceedings. *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015). These 'include, but are not limited to . . . matters concerning the administration of the estate,' 'counterclaims by the estate against persons filing claims against the estate,' 'determinations of the validity, extent, or priority of liens,' and 'other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.' 28 U.S.C. § 157(b)(2)(A), (C), (K), (O)").

[4] 28 U.S.C. § 157(b)(2)(G).

5

foreclosing parties. . . . [and] [t]he state court, at all times material, lacked jurisdiction [to determine the foreclosure proceeding]. . . ." (Doc. 1).

On July 10, 2023 the Hon. Brenda K. Sannes, Chief United States District Judge, dismissed the case and issued a comprehensive analysis of the federal court's position when asked to undo a final state court decision. (Doc. 85). In a 29-page decision Chief Judge Sannes stated:

> Defendants argue that the original complaint and proposed amended complaint are barred by the Rooker-Feldman doctrine. (Dkt. Nos. 14-1, 55-8, 75-3). Plaintiff responds that Rooker-Feldman does not apply where, as here, the state court order was invalid. (Dkt. No. 67, at 9).
>
> The underlying principle of the Rooker-Feldman doctrine is that within the federal judicial system, only the Supreme Court may review state-court decisions. . . . However, as discussed below, because many of Plaintiff's claims, including those challenging the state court's jurisdiction, seek "to undo the [state court] judgment" imposed against her in connection with the foreclosure on her property, it is 'the paradigm situation in which Rooker–Feldman precludes a federal district court from proceeding.' (internal quotation marks omitted) . . . .

*Id.* at 13–14. The same standard applies in this Court.

As indicated prior, a motion for relief from the automatic stay is a core proceeding. The District Court has already indicated *Rooker-Feldman* controls and neither this Court nor the District Court can "undo a state court judgment." For these reasons, the Debtor has failed to establish a likelihood of prevailing on the merits. Since she cannot establish the first requirement for a stay, no further detailed analysis is required. However, the Court will briefly address the remaining factors.

    **C.**    **The effective allocation of judicial resources.**

Prior to issuing its determinations, this Court reviewed the extensive pleadings and held hearings on all matters. Therefore, it would be a waste of judicial resources for the District Court to withdraw the reference of this case. *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, Case No. 09-CV-226, 2009 U.S. Dist. LEXIS 115854, at * 5 (N.D.N.Y. Dec. 11, 2009)

6

("Hearing the [matter] in District Court would not increase the efficiency of judicial resources . . . the many issues requiring determination are core bankruptcy proceedings. . . . ").

    **D.**    **Delay and potential costs to the parties.**

The Debtor is not financially liable for and does not have any ownership interest in the properties at issue. In effect, the Debtor is seeking to obtain these properties despite final state court judgments and referees' deeds to the lenders. In contrast, the secured creditors have title to the properties but have been stymied by the Debtor's various legal tactics. Any continued hinderance of their rights to the property at issue would harm the creditors. The secured creditors remain unpaid and will continue to be injured if relief from the stay is not granted. *In re Jones*, Case No. 23-35048, 2023 Bankr. LEXIS 1481, at *6 (Bankr. S.D.N.Y. June 6, 2023). ("The Court finds that there may be substantial harm to the secured creditor . . . Granting the Debtors' relief would further delay [secured creditors] foreclosure action which it seeks to pursue with respect to its mortgage on the Debtor's property.").

    **E.**    **Uniformity of bankruptcy administration.**

The granting of the WOR would not foster uniform bankruptcy administration. "Certainly, allowing the bankruptcy court . . .to address core matters promotes the uniform administration of the bankruptcy code." *Buchwald v. Renco Group (In re Magnesium Corp. of Am.* 2004 U.S. Dist. LEXIS 9398, at *6 (S.D.N.Y. May 24, 2004). If a WOR was granted every time a debtor was disappointed with a ruling on a motion for relief, chaos not uniformity would result.

    **F.**    **Forum shopping.**

On February 7, 2018 the Debtor filed a joint Chapter 11 bankruptcy proceeding with her husband in the Eastern District of New York. *See In re Yiannakis C. Ionnides and Anna T. Balash*, Case No. 18-40728 (Bankr. E.D.N.Y.). According to the filings in that proceeding, "[t]he property in Astoria, Queens located at 21-08 30th Avenue, Astoria, New York 11102, was their principal

residence." (Doc. 133). During the proceeding, a motion for relief was made for the properly located at 615 State Street, Hudson, New York (Doc. 135). On August 27, 2019 the bankruptcy court granted the creditor's request to lift the stay. (Doc. 153). The Debtor appealed.[5] (Doc. 154).

On August 3, 2020, the Internal Revenue Service filed an objection to the Disclosure Statement, stating that the Debtors had not filed their amended 2018 federal tax return. (Doc. 278). According to the IRS, the Debtors also failed to file a 2019 federal tax return and had not paid post-petition tax liabilities. (Doc. 287). On August 11, 2020 the Debtor sought to "Withdraw Voluntary Bankruptcy Petition. . . " (Doc. 285). On August 14, 2020 the bankruptcy court issued an "Order to Show Cause why this case should not be dismissed for cause. . . ." (Doc. 287). On August 8, 2020 the bankruptcy court dismissed the Debtor's Chapter 11 proceeding. (Doc. 303).

The WOR appears to be yet another attempt by the Debtor to rewrite the financial and procedural histories of these matters. The Debtor has failed to convince any bankruptcy or district court to overturn a final state court determination. There is no reason to anticipate the District Court would withdraw the reference when Chief Judge Sannes has articulated why the federal courts are not here to serve as an appellate court for final state court foreclosure determinations.

### II.    Irreparable harm (movant if stay is not granted)

The Debtor argues the sale of the property will result in irreparable harm to her. However, "[t]he fact that [a] property will be sold absent a stay does not automatically constitute irreparable harm" because in certain circumstances harm from the sale of a property "may be fully remedied by monetary damages . . . ." *In re Giambrone*, 600 B.R. 207, 213 (Bankr. E.D.N.Y. 2019).

---

[5] The bankruptcy proceeding and the appeal continued until the Debtor requested to withdraw her appeal of the order lifting the automatic stay. (Doc. 305). The District Court granted the Debtor's request to withdraw the appeal. (Doc. 305).

8

Since the Debtor has no legal or equitable interest in the properties, any potential issues can be remedied by a money judgment. *Id.*

### III.  Injury to Other Parties

In addition to establishing irreparable harm to her interests, the Debtor must also establish the harm to her outweighs any potential damage to other parties. She has failed to do this. As noted, the Debtor is neither financially liable nor does she have any ownership interest in any properties at issue. In contrast, the secured creditors have title in the property but cannot advance their interests because of the Debtor's litigation tactics. This Court lifted the automatic stay to allow all matters to be brought before the proper court to address the Debtor's claims: the state court. (ECF Nos. 13, 24 & 79).

### IV.  Public Interest

The public interest is not served by the District Court withdrawing reference in this case. In fact, the opposite is true. "Undoubtedly, public policy does favor centralization of bankruptcy proceedings in the bankruptcy court where a case is pending." *N. Parent*, 221 B.R. 609, 620 (Bankr. D. Mass. 1998).

### V.  Reasonable Accommodations

Finally, the Debtor argues this Court has failed to accommodate her disability stating, "[t]he Movant has been denied due process and equal access to the court due to failure to provide accommodations the Rehabilitation Act of 1973."[6] (ECF No. 85 at 2). At the January 16, 2025 hearing the Debtor elaborated her position and on January 21, 2025 the Debtor filed an "Affidavit of Testimony. . . ." (ECF No.142). In the Affidavit she states:

---

[6] Neither the Rehabilitation Act of 1973 nor The Americans with Disabilities Act applies to federal courts. *See McDowell v. McDonough*, 2024 U.S. Dist. LEXIS 183961 (W.D.N.Y. Oct. 8, 2024).

> Due to my communication disability, I was unable to fully understand what was being said . . . . as so was unable to adequately respond on my behalf, resulting in my not having equal access to the court and a denial of my due process rights.. . . .
>
> Due to this, three creditors were granted a Relief from the automatic stay based upon Rooker-Feldman, which I did mention did not apply in the Bankruptcy Court, but this was ignored.

*Id.* The Debtor concludes:

> The bankruptcy court, and less so the US Trustee failed to: 1) Provide reasonable accommodations necessary for meaningful participation in the proceedings; And 2) Both failed to ensure a fair heating on material factual disputes, particularly concerning motions for relief from automatic stay and newly discovered evidence that void state court judgment were procured by fraud and violation of criminal law. . . . .

*Id.* The Debtor relies upon Judiciary Policy, Volume 5, Chapter 2 claiming the failure to accommodate her communication disability led to her being denied "equal access" to the court and constituted a "denial of her due process rights." *Id.* However, she does not delineate a subsection she relies upon. The Court's review of the Judicial Policy, Vol. 5, Ch. 2 § 255 discusses services to those with communication disabilities and states in pertinent part:

> (a) Under Judicial Conference Policy, a court must provide sign language interpreters or other auxiliary aids and services to participants in federal judicial proceedings who are deaf, hearing impaired or have communication disabilities. . .

Jud. Pol. Vol. 5, Ch. 2. § 255. On September 9, 2024 the Debtor filed a letter prepared by her nurse practitioner. (ECF No. 11). The letter indicates the Debtor "presents with communication disability, and this particularly affects her in court settings, when stressors are amplified continually." *Id.* The accommodations requested by the Debtor's nurse practitioner are:

> 1. That Ms Balash has a disability advocate attending with her by zoom with her at any and all proceedings . . . .
>
> 2) That Ms, Balash be allowed to record any and all proceedings for disability mitigation. . . .
>
> 3) That Ms, Balash not be interrupted when speaking. . . .

10

4) That the Court provide effective communication with Ms. Balash . . .

5) Please cover ONE subject at a time . . . .

6) Ms. Balash will need additional time for answers including court response time . . . .

7) Ms. Balash will need the Court . . . speak slowly during proceedings. . . .

8) Have CART (Computer Aided Realtime Transcription) set up and running. . . .

9) That Ms. Balash [receive full and complete meanings for any words or terns that are used which are unclear or confusing to her. . . .

*Id.* Of the requested accommodations, there were only two (2) which this Court was unable to provide: the recording of the hearings and Computer Aided Realtime Transcription ("CART").

The Debtor was not allowed to record proceedings because Local Bankruptcy Rule 5007-1 prohibits, "photography, recording devices, and broadcasting" of hearings, thus allowing one official transcript of the proceedings. To expedite the ability to hear a proceeding, this Court utilizes "CourtSpeak" and, ordinarily, the complete recordings of any and all hearings are docketed and usually available to any party within 48 hours of the hearing. The Court also provides the forms for ordering a transcript and/or CD of the hearings on its website. This Court does not utilize the CART system and therefore, it is not available.

A cursory review of the docket in this matter clearly indicates this Court did in fact attempt to accommodate the Debtor. The Debtor was not discriminated against based upon her communication issues and this Court provided every reasonable accommodation that it could to the Debtor.

**CONCLUSION**

For all of these reasons, the Court denies the Debtor's request for a stay pending the determination of the District Court whether to withdraw the reference of this bankruptcy proceeding.

Dated: January 29, 2025
Albany, N.Y.

/s/ Robert E. Littlefield, Jr.
Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Judge